Michael NATALE and Raymond Clement, Plaintiffs,

v.

BROWARD COUNTY, a political subdivision of the State of Florida, Defendant.

No. 96–6758–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Oct. 28, 1997.

Bruce Botsford, Curtis & Curtis, P.A., Ft. Lauderdale, FL, for plaintiffs.

Kevin Kelleher, Assistant County Attorney for Broward County Governmental Center, Ft. Lauderdale, FL, for defendant.

## ORDER

MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court upon the Defendant's Motion for Summary Judgment, filed on April 18, 1997. This motion is ripe for resolution as it pertains to all counts of the Complaint: Count I, Procedural Due Process; Count II, First Amendment Retaliation; and Count III, Liberty Interest. A hearing on the Motion for Summary Judgment was held on October 22, 1997, during which the arguments of counsel were heard. After a thorough review of the record and pleadings, and upon consideration of the issues and arguments raised in the hearing, the Defendant's motion for summary judgment on all counts is hereby GRANTED.

## I. INTRODUCTION

This is an action based on an alleged failure to provide an impartial tribunal as a procedural due process violation (Count I), alleged retaliatory action taken as a result of Plaintiffs' protected speech in violation of the First Amendment (Count II), and on an alleged deprivation of due process concerning a claimed liberty interest arising from reputational damage (Count III). Plaintiffs allege that they received a greater degree of discipline for work-related infractions than otherwise would have been imposed because they sent letters to the county commissioners, the county administrator, and the county attorney alleging office mismanagement after disciplinary proceedings had been instituted against them, and that the disciplinary procedures involved violate due process.

## II. UNDISPUTED FACTS[1]

### A. Plaintiff Michael Natale

Plaintiff Michael Natale was hired by Broward County on March 2, 1987, and was promoted position of Senior Code Enforcement Officer on April 9, 1995. He was employed as a Senior Code Enforcement Officer for the Broward County Code and Zoning Enforcement Commission until his termination on July 3, 1996.

On June 4, 1996, Plaintiff Natale was informed in a letter from Broward County that a pre-disciplinary meeting was scheduled for June 12, 1996, to discuss allegations of employee misconduct. At the pre-disciplinary meeting, Natale was advised of the allegations against him and given an opportunity to provide information about the allegations prior to any disciplinary action. Natale was accused of misusing county equipment, demonstrating improper conduct during work hours, demonstrating poor judgment and gross insubordination, and providing in his capacity as Senior Code Enforcement Officer improper direction and oversight of subordinate personnel. (Exhibit "B" of Notice of Filing by Defendants, filed April 18, 1997.)

On June 25, 1996, the director of the Broward County Department of Strategic Planning and Growth Management met with Plaintiff Natale and offered him a certain level of discipline in return for his foregoing any rights to contest the disciplinary action, an offer to which Natale did not respond.

On June 28, 1996, Natale delivered a letter to County Commissioner Gerald T. Thompson, alleging selective enforcement of inspections he and/or Plaintiff Clement had conducted as well as a general level of improper management in the Code and Zoning Enforcement Office (Exhibit "C" of Plaintiff's Amended Complaint, filed on May 9, 1997). Delivery of this letter occurred after Natale attended the pre-disciplinary meeting in which he was advised that he faced possible disciplinary action and after his meeting with the director of the Broward County Department of Strategic Planning and Growth Management Department regarding the set disciplinary offer to which he did not respond.

On July 3, 1996, Natale's employment as a Senior Code Enforcement Officer with Broward County was terminated. The Summary Description of the Incidents accompanying the Report (Exhibit "D" of Notice of Filing by Defendants, filed April 18, 1997) stated the reasons for Natale's termination as follows: (1) conducting City of North Lauderdale business and political campaign trips while on county time; (2) utilizing his county cellular phone for personal calls and failing to identify those calls when given the opportunity to do so in a divisional cellular phone audit; (3) utilizing his county automobile to run personal errands while on county time, including conducting political campaign trips and transporting materials for a business within his assigned territory; (4) conducting personnel business with a business within his assigned territory, including storing vehicles he purchased at a county auction, thereby creating an appearance of a conflict of interest; (5) creating a hostile and non-productive work environment for subordinate personnel and co-workers, including participating in intimidation tactics against

---

1. As taken from the Statement of Uncontested Facts in the Joint Pretrial Stipulation, filed on July 11, 1997.

co-workers, making derogatory statements about administrative personnel, and involving subordinate personnel on political campaign trips; and (6) failing to keep accurate logs and time sheets, in violation of written division policy.

Upon his termination and pursuant to the applicable collective bargaining agreement, a grievance was filed on Natale's behalf. As a result, on July 16, 1996, a Step III meeting regarding Natale's grievance was held. At that meeting, Natale had the opportunity to present testimony, evidence, or other information and contest the disciplinary action taken against him. In a letter dated July 23, 1996, and pursuant to the applicable collective bargaining agreement, Natale's grievance was submitted to binding arbitration. On November 20–21, 1996, an arbitration hearing was held regarding his grievance; at that hearing, Natale was also afforded the opportunity to present testimony, evidence, or other information, call witnesses, and cross-examine any adverse witnesses in contesting the disciplinary action taken. The arbitrator presiding over the grievance issued an Expedited Opinion and Award dated December 7, 1996, which reduced Natale's punishment from termination to a twenty-day suspension without pay. (Exhibit "J" of Notice of Filing by Defendants, filed April 18, 1997).

### B. Plaintiff Raymond Clement

Plaintiff Raymond Clement was hired by Broward County on June 11, 1990. He was promoted to the position of Senior Code Enforcement officer on April 9, 1995. Clement was employed as a Senior Code Officer for the Broward County Code and Zoning Enforcement Commission from this time until July 3, 1996.

On June 4, 1996, Clement was advised in a letter from Broward County that a predisciplinary meeting was scheduled for June 12, 1996, to discuss allegations of employee misconduct. At the pre-disciplinary meeting on June 12, 1996, Clement was advised of the allegations against him and given an opportunity to provide information about the allegations prior to any disciplinary action being taken. Clement was accused of misusing county equipment, demonstrating improper conduct during work hours, failing to follow directives, demonstrating poor judgment and gross insubordination, and providing in his capacity as Senior Code Enforcement Officer improper direction and oversight of subordinate personnel. (Exhibit "C" of Notice of Filing by Defendants, filed April 18, 1997.)

On July 1, 1996, the director of the Broward County Department of Strategic Planning and Growth Management met with Plaintiff Clement and also offered him a certain level of discipline in return for his foregoing any rights to contest the disciplinary action, an offer which Clement declined by telephone on July 2, 1996.

On July 2, 1996, Clement delivered a letter to County Commissioner Gerald T. Thompson, supporting Plaintiff Natale's allegations and alleging through specific examples a general level of corruption in the Code and Zoning Enforcement Office (Exhibit "D" of Plaintiff's Amended Complaint, filed on May 9, 1997). The delivery of the letter also occurred after Clement attended the pre-disciplinary meeting in which he was advised that he faced possible disciplinary action and after his meeting with the director of the Broward County Department of Strategic Planning and Growth Management Department.

On July 3, 1996, Clement received a ten-day suspension without pay and a demotion from his position as a Senior Code Enforcement Officer with Broward County to the position of Code Enforcement Officer, with a 7.5% pay reduction. He was also placed on a "Last Chance Warning." The Summary Description of the Incidents accompanying the Report (Exhibit "E" of Notice of Filing by Defendants, filed April 18, 1997) stated the reasons for Clement's termination as follows: (1) conducting personal business while on county time for extended periods of time; (2) utilizing his county cellular phone for personal calls and his outside employment of a painting business and failing to identify those calls when given the opportunity to do so in a divisional cellular phone audit; (3) utilizing his county automobile to run personal errands while on county time; (4) conducting personnel business with a business within his

assigned territory, thereby creating an appearance of a conflict of interest; (5) creating a hostile and non-productive work environment for subordinate personnel and co-workers, including participating in intimidation tactics against co-workers, making derogatory statements about administrative personnel, sending subordinate personnel home early and instructing them to falsify time sheets, and involving subordinate personnel on personal errands; and (6) failing to keep curate logs and time sheets, in violation of written division policy.

Pursuant to the applicable collective bargaining agreement, a grievance was filed on Clement's behalf on July 9, 1996. As a result, on July 16, 1996, a Step III meeting regarding Clement's grievance was held. At that meeting, Clement had the opportunity to present testimony, evidence, or other information and contest the disciplinary action taken against him. In a letter dated July 23, 1996, and pursuant to the applicable collective bargaining agreement, Clement's agreement was submitted to binding arbitration. An arbitration hearing was scheduled to be held on March 4, 1997. At the arbitration hearing held on that date, Clement and Broward County mutually resolved the grievance and entered into a Settlement Agreement. Pursuant to the Settlement Agreement, Clement agreed to withdraw his grievance dated July 9, 1996.

### III. STANDARD OF REVIEW

The standard to be applied in reviewing summary judgment motions is contained in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment may be entered only where there is *no* genuine issue of material fact. The moving party bears the burden of meeting this standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). As the Eleventh Circuit has explained:

In assessing whether the movant has met [its] burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608; *Marsh*, 651 F.2d at 991. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.*, 655 F.2d 598 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh*, 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.*, 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic*, 669 F.2d at 1031; *Croley v. Matson Navigation Co.*, 434 F.2d 73 (5th Cir.1970).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160, 90 S.Ct. at 1609 . . .; *Marsh*, 651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir. 1967). *See Dalke v. Upjohn Co.*, 555 F.2d 245, 248–49 (9th Cir.1977).

*Clemons v. Dougherty County*, 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486 (11th Cir.1985), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986). The United States Supreme Court

has provided significant additional guidance as to the evidentiary standard which district courts should apply when ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–35, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further acknowledged that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 243, 106 S.Ct. at 2507. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding in his favor, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513–14.

In a companion case, the Supreme Court declared that a non-moving party's failure to prove an essential element of its claim renders all factual disputes as to that claim immaterial and requires the granting of summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–33, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986). We measure the Plaintiffs' motion for summary judgment against these standards.

## IV. PROCEDURAL DUE PROCESS

In the Amended Complaint, Plaintiffs contend that "Broward County denied Plaintiffs their property without due process in violation of the Fourteenth Amendment to the United States Constitution by terminating Michael Natale and demoting Raymond Clement without providing an impartial tribunal for the pre-disciplinary and post-disciplinary hearings and by failing to follow the procedures set forth in the collective bargaining agreement." (Amended Complaint, ¶ 44). Plaintiffs allege that the disciplinary procedures were biased in two regards: the pre-disciplinary hearing was conducted by the same official who had originally investigated Plaintiffs Natale and Clement, Susan Pierce (Amended Complaint, ¶ 35), and the post-disciplinary hearing was conducted by the same individual who was involved in the investigations of Plaintiffs Natale and Clement and participated in the decision to take discipline again them, Peter Ross (Amended Complaint, ¶ 37). Additionally, Plaintiffs claim that Peter Ross was not an impartial tribunal and base that contention on a comment he made that was quote I in the *Miami Herald*, in which he stated that, "Mike [Natale] can say anything he wants at this point in time. They already had their predisciplinary hearing before they made the allegations, so anything they claim after that has no credibility." (Amended Complaint, ¶ 38).

In their Motion for Summary Judgment, Defendant argues that the procedure afforded the Plaintiffs in their discipline was constitutionally adequate insofar as it awarded Plaintiffs a pre-termination hearing and the presence of adequate post-termination remedies (Defendant's Motion for Summary Judgment, p. 6, filed on April 18, 1997). Defendants further argue that any alleged deprivation of due process in the termination procedure itself, such as the claim of bias pled by Plaintiffs in their Amended Complaint, was cured by the arbitration proce-

dure, which provided Plaintiffs with an impartial, neutral decisionmaker to evaluate the discipline imposed.

Plaintiffs claim that the biased nature of the proceeding cannot be "constitutionally redeemed by review in an unbiased tribunal," (Plaintiffs' Response to Defendant's Motion for Summary Judgment, p. 5, filed on May 15, 1997, citing *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 333 (9th Cir.1995)) and thus even if the arbitration was an impartial proceeding, it cannot negate the alleged constitutional deprivation. They argue that "even if we were presume that the arbitration was an impartial proceeding, the constitutional deprivation could not be reversed." (Plaintiffs' Response to Defendant's Motion for Summary Judgment, p. 6, filed on May 15, 1997).

■ It is established law that the Constitution requires the state to provide fair procedures and an impartial decisionmaker before a deprivation of life, liberty, or property ensues. See *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir.1994). As Plaintiffs possessed a property interest in their employment that arose from the collective bargaining agreement, they are entitled to a pre-termination hearing which involves "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494. (1985). The Constitution does not require that the decisionmaker in this pre-termination hearing be unbiased; "in the case of an employment termination case, due process does not require the state to provide an impartial decisionmaker at the pre-termination hearing. The state is obligated only to make available the means by which the employee can receive redress for the deprivations." *McKinney v. Pate*, 20 F.3d 1550, 1562 (11th Cir.1994) (citing *Parratt v. Taylor*, 451 U.S. 527, 543, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981)). The Eleventh Circuit has emphasized this point: "[t]he precedent established by *Parratt* is unambiguous: even if McKinney suffered a procedural *deprivation* at the hands of a biased Board his termination hearing, he has

not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation." *McKinney v. Pate*, 20 F.3d at 1563.

Thus, even accepting as true the allegations of bias in the pre-termination hearing pled by Plaintiffs in their Amended Complaint, there can be no viable procedural due process claim unless the state failed to provide post-termination remedies for any procedural deprivation occasioned by bias. Plaintiffs' employment is governed by an Agreement between Broward County and the Federation of Public Employees (Amended Complaint, ¶ 14) and this Agreement provides for binding arbitration as an available procedure to appeal any employment decisions pursuant to the Agreement. There has been no claim that the arbitration was not impartial or otherwise failed to satisfy due process; Plaintiffs' only argument is that even if the arbitration was impartial, the constitutional deprivation could not be reversed, and cite in support of their claim the case of *Clements v. Airport Authority of Washoe County*, 69 F.3d 321 (9th Cir.1993) (Plaintiffs' Response to Defendant's Motion for Summary Judgment, p. 6, filed on May 15, 1997). Plaintiffs' conclusion is incorrect as a matter of law under Eleventh Circuit precedent. The applicable analysis is whether in this case the state remedy of arbitration satisfies due process requirements; if it does, then the procedural deprivation at the pre-termination hearing is indeed adequately remedied. See *McKinney v. Pate*, 20 F.3d at 1563.

The binding arbitration provided pursuant to the applicable collective bargaining agreement provided for a hearing in which Plaintiffs were permitted to call witnesses and present evidence in support of their case. Upon the conclusion of the hearing, the arbitrator has full authority to modify or vacate the discipline if such an action is deemed appropriate (Article 15 of the Collective Bargaining Agreement). Absent any claim that the arbitration itself is unconstitutionally partial, these procedural safeguards by a neutral arbitrator ensure that the state has provided an adequate means of remedying

any procedural deprivation that may occur. The Court notes that Plaintiff Natale in fact had his punishment favorably modified pursuant to this arbitration procedure. (Exhibit "J" of Notice of Filing by Defendants, filed April 18, 1997). Construing all facts pled in the light most favorable to Plaintiffs, there has been no evidence presented that the arbitration proceeding was biased or otherwise failed to satisfy due process requirements; accordingly, as a matter of law summary judgment on Count I of the Complaint is appropriate and hereby GRANTED.

## V. FIRST AMENDMENT RETALIATION

In the Amended Complaint, Plaintiffs claim that Defendant's actions in terminating Natale and in pursuing recourse against Clement were taken "because of Plaintiff's publicly expressed opposition to the misconduct within the Code and Zoning Enforcement Division" (Amended Complaint, ¶ 56 & ¶ 57). In particular, Plaintiffs allege that "their First Amendment right was violated in that the level of discipline taken against [them] was a direct and proximate result of their protected expression of free speech" (Plaintiffs' Statement of the Case ¶ 24, Joint Pretrial Stipulation filed on July 11, 1997). Plaintiffs contend that "the action of Defendants in taking this disciplinary action against Plaintiffs violated Plaintiffs' right of free speech as guaranteed by the First and Fourteenth amendments to the United States Constitution." (Amended Complaint, ¶ 58).

First Amendment retaliation claims are evaluated under the three-part analytical approach outline in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). First, the employee must establish that the First Amendment protects the speech. Second, the employee must establish that the protected speech was a "motivating factor" in the decision not to rehire. Upon this showing, the burden shifts to the employer to demonstrate by a preponderance of the evidence that "it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct." *Mount Healthy City School District Board of Education*, 429 U.S. 274 at 286, 97 S.Ct. 568 at 575, 50 L.Ed.2d 471.

The Eleventh Circuit has expanded and clarified this analysis: "Where the public employer denies that the employee was disciplined in violation of that employee's first amendment rights, the court engages in a four-stage analysis: 1) the employee's speech must involve a matter of public concern in order for it to be protected, 2) the employee's first amendment interests must outweigh the public employer's interests in efficiency (the *Pickering* balancing test), 3) the employee must have been disciplined, in substantial part, because of the protected speech, and 4) the public employer must not be able to prove by a preponderance of the evidence that it would have disciplined the employee even without the protected speech." *Johnson v. Clifton*, 74 F.3d 1087, 1092 (11th Cir. 1996).

### A. Plaintiff's Speech & Public Concern

In order for Plaintiffs to establish that their speech was constitutionally protected, it must be speech on a matter of public concern. In *Connick*, the Supreme Court observed that "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983). Whether a statement is on a matter of public concern is a question of law. *Johnson v. Clifton*, 74 F.3d 1087, 1092 (11th Cir.1996). The Eleventh Circuit has observed that "[i]f the relevant speech was motivated by personal concerns instead of public concerns then it is not protected by the First Amendment in this context." *Johnson v. Clifton*, 74 F.3d at 1092. In evaluating whether speech may be fairly characterized as speech on a matter of public concern, "it is relevant to examine whether the public interest is asserted on the basis of a vague and general assumption that the public would be interested, versus an articulable, specific public interest." *Peterson v. Atlanta Housing Authority*, 998 F.2d 904, 916 (11th Cir.1993). Examination of the record in this case reveals that, viewing the

evidence in the light most favorable to plaintiffs, the content, form, and particularly the context of the speech indicate that the speech was motivated by personal concerns rather than on a matter of public concern, and is thus not afforded First Amendment protection in this situation.

Plaintiff Natale's letter, which was sent to the County Commissioner and copied to all Broward County Commissioners, the County Administrator, and the County Attorney, contained allegations of selective enforcement of building inspections as well as general contentions of supervisory problems and unfair patronage. The letter of Plaintiff Natale also contended that "the department has been ordered to eliminate public records and hide still others from the media;" that "on several occasions the department has suppressed certain accounting discrepancies from the county;" that "the department illegally acquired furniture from other departments of the county, removed their assay numbers, and subsequently disposed of them by giving the furniture away;" and finally, "the department is beset with a form of patronage." (Exhibit "C" of Plaintiff's Amended Complaint, filed on May 9, 1997). Plaintiff Clement's supporting letter, also sent to the County Commissioner and copied to all Broward County Commissioners, the County Administrator, and the County Attorney, alleged hiding and mislabeling documentation in connection with a Miami Herald investigation as well as "widespread discontent in the Code and Zoning Enforcement Enforcement Office regarding Ms. Pierce's strong-arm tactics and dictatorship style of supervision." (Exhibit "D" of Plaintiff's Amended Complaint, filed on May 9, 1997).

■ Evaluation of the content of employee speech is undeniably a "particularized balancing," *Connick,* 461 U.S. at 149, 103 S.Ct. at 1691, and it is true that mismanagement in upholding the integrity of the public inspection process is of potential public concern. However, in their discussions of alleged improprieties in the investigative process, Plaintiffs Natale and Clement's letters only addressed their own inspections that they felt were not adequately followed up upon, and their letters did not offer examples of supposedly unenforced inspections conducted by any other investigators. Their other allegations, while wide-ranging, fundamentally address internal management improprieties and grievances which are only of public concern in the most general sense. Plaintiff Natale and Plaintiff Clement both open their letters identifying themselves specifically as county employees; it is thus reasonable to assume that is the context in which they were writing, and wished to be heard, rather than in their capacity as public citizens. When "a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).

Both Plaintiff Natale and Plaintiff Clement admit in their Affidavits dated May 8, 1997, that their decision to write their respective letters occurred after their "employment status was insecure because of potential disciplinary action" (Affidavit of Michael Natale, ¶ 5 of Exhibit 2, in Notice of Filing, filed with this Court on May 15, 1997; Affidavit of Raymond Clement, ¶ 5 of Exhibit 3, in Notice of Filing, filed with this Court on May 15, 1997). As noted, the letters were sent only after Plaintiffs Natale and Clement were notified that disciplinary procedures were pending against them, and after they had been offered what was a certain, albeit minimum, level of discipline in return for their agreement not to contest their punishment. That Plaintiffs sent these letters only after disciplinary proceedings were commenced indicates that the motivation for these letters is more properly characterized as a personal grievance, and attempted retribution at the Department, than disinterested public concern.

Under all of the circumstances, and construing the facts in the light most favorable to Plaintiffs, this Court finds that as a matter of law these letters are most fairly characterized as speech by public employees in the

capacity of disgruntled employees and not as citizens on matters of public concern.

### B. Plaintiff's First Amendment Interests & Government's Interests

 Even if the employee's speech can be viewed as touching upon a matter of public concern however, the *Pickering* balance mandated by the Eleventh Circuit would afford the government broad discretion for its actions. *Johnson v. Clifton,* 74 F.3d 1087, 1092 (11th Cir.1996). *Pickering* requires balancing "between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). This balance reflects the "common sense realization that government offices could not function if every employment decision became a constitutional matter." *Connick v. Myers,* 461 U.S. 138, 143, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983).

The allegations of Plaintiffs Natale and Clement, particularly those concerning improper enforcement of building inspections and a "dictatorial" style of office leadership, undeniably impair the efficient functioning of the Code and Zoning Enforcement Office and its ability to work with other governmental entities to enforce its important safety mandates in a productive manner. At a minimum, the letters are disruptive and carry the "clear potential for undermining office relations" addressed in *Connick.*

Although Defendants contend that the discipline of Plaintiffs was unrelated to the publication of the letter, there is nonetheless no need for an employer to "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Connick,* 461 U.S. at 152, 103 S.Ct. at 1692. Plaintiffs present no evidence that they availed themselves of the normal procedure for registering complaints or concerns regarding how the inspections or office was managed, outside of observing in their letter that they "protested to their supervisors."

(Exhibit "C" of Plaintiff's Amended Complaint, filed on May 9, 1997). Sending and copying a letter alleging "strong-arm tactics," unfair patronage, and special treatment in the enforcement of building inspections without first raising concerns with the employer in effect blindsides the employer, particularly when done so in connection with an ongoing disciplinary dispute, and is counterproductive at best. The abilities of Plaintiffs to continue to perform their responsibilities and maintain a successful working relationship within the Code and Zoning Enforcement Office was impeded by their letters.

Under the circumstances and based on the record, it cannot be said in this case that the Plaintiffs' First Amendment interests outweigh the State's interests in efficient and productive fulfillment of its duties to the public.

### C. Plaintiffs' Speech As a Substantial Factor in Discipline

Although this Court has concluded based on an examination of the record that as a matter of law that Plaintiffs' letters arise out of their status as disgruntled employees and not public citizens and thus do not constitute protected speech for the purposes of the First Amendment, and that even if the letters did constitute protected speech that the State's interests in efficiency indicate a wide degree of deference to its actions as employer, it is important to note that even when viewed in a light most favorable to the Plaintiffs, it is unlikely that there is sufficient evidence to support a jury finding that the level of discipline Plaintiffs received was motivated, in substantial part, because of their speech.

Plaintiffs Natale and Clement were appraised of the pending disciplinary actions against them prior to their sending the letters at issue. They were accused of numerous improprieties, including conducting personal business while on county time for extended periods of time, utilizing county property for personal reasons while on county time, creating an appearance of a conflict of interest, creating a hostile and non-productive work environment for subordinate personnel and co-workers, and violat-

ing written division policy. They were then informed that they would receive a certain, set, level of discipline in exchange for not contesting the charges; this "plea bargain" approach is likely designed to minimize the time and resources expended in disciplinary proceedings. Neither Plaintiff Natale nor Plaintiff Clement accepted this offer, and it was only at this point that they sent their respective letters to the County Commission. Plaintiffs' argument of retaliatory punishment fails to take into consideration the discretion the county may exercise as employer in disciplinary proceedings, the severity of their actions, and their decision not to accept a reduced, definite level of discipline. It is important to note that there was no predetermined level of discipline established by the county as employer for their alleged infractions; thus, any claim that the discipline awarded was an improper deviation is virtually impossible for Plaintiffs to establish satisfactorily.

In granting summary judgment when the alleged speech also occurred after disciplinary proceedings had commenced, the Eleventh Circuit noted that, "[w]e know of no case which might have clearly told [Defendant] that he could not take the disciplinary action indicated by an investigation which was initiated before he even knew about the allegedly protected speech, and in circumstances where the public concern implication was doubtful." *Johnson v. Clifton,* 74 F.3d 1087, 1093 (11th Cir.1996). While plaintiffs may be able to raise some doubt about the extent to which their letters may have had an impact on the discipline, based on the record it is unlikely that they would be able to raise a genuine issue of material fact as to whether their speech was a "substantial" factor in their discipline. This is particularly true given the Supplemental Affidavit of Michael Wanchik, the Defendant in this action, who testified in regards to both Plaintiffs Natale and Clement that his decision to approve their respective disciplinary measures was made "independent of and without regard to [their] letter[s] to then-County Commissioner Gerald F. Thompson dated June 28, 1996. Furthermore, the degree of discipline ... was in no way affected or impacted by [their] letter[s]." (Supplemental Affidavit of Mi-

chael Wanchik, filed on May 27, 1997). Additionally, in the hearing on the Motion for Summary Judgment conducted by this Court Plaintiffs' counsel admitted that "The supplemental affidavit of Mr. Wanchik filed after I filed my Response negates my First Amendment claim." (Transcript of Hearing on Motion for Summary Judgment, October 22, 1997, p. 13, lines 20–22). Based on the evidence, summary judgment would be appropriate under the circumstances as there is no triable issue of fact for the jury as to whether the speech was a substantial factor in the discipline received.

### D. Plaintiffs' Speech And Employment Decision In Absence of Speech

■ The final consideration in a free speech retaliation claim is whether the State can prove by a preponderance of the evidence that it would have reached the same decision as to the employee's discipline even in the absence of the protected conduct. *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). For the purposes of summary judgment, the appropriate standard is whether, construing the facts in the light most favorable to the Plaintiffs, there is any genuine issue of material fact as to whether the State would have reached the same decision to discipline Plaintiffs absent their having sent the letters.

Plaintiffs were already subject to discipline for multiple employee conduct breaches, some of which were fairly serious. (Exhibit "J" of Notice of Filing by Defendants, filed April 18, 1997). Plaintiffs had already rejected an attempt to settle on an appropriate and fixed level of discipline in exchange for concluding the proceedings, and thus took the risk that the final punishment imposed would be more serious than originally offered. There is no direct evidence offered by Plaintiffs in support of their claim that their discipline was in retaliation for their alleged free speech; their claim is based upon the assumption that the County would have exercised its discretion to punish their work-related infractions differently absent the letters. This inference is tenuous at best, and the record does not support the conclusion of

improper retaliatory motive (*see also Rubinovitz v. Rogato,* 60 F.3d 906, 911 (1st Cir. 1995)). Based on the timing involved, Plaintiffs' speech simply played no role in the instigation of an investigation or in the formal complaint. Upon rejecting the County's attempt to resolve the issue preliminarily, Plaintiffs implicitly acceded to the County's discretion as employer in responding to the misbehavior of Plaintiffs. This Court is mindful of the concern that an employee should not, by engaging in constitutionally protected conduct, be able "to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of the decision." *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 285, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977).

For Plaintiffs to be able to diminish appropriate employment procedures simply by engaging in protected speech at any point in the process and then using that speech to circumvent any attempts at discipline is an inappropriate use of First Amendment freedoms. Plaintiffs violated county policy in multiple ways and rejected the attempt for an amicable resolution. They would have been disciplined regardless of engaging in any free speech, and have produced no convincing evidence from which a reasonable jury could conclude that the State acted outside of its discretion as an employer in its punishment. As a result, summary judgment for Defendants on the retaliatory free speech claim, though based on the Court's conclusion that as a matter of law Plaintiffs' letters did not constitute protected free speech, would also be appropriate due to the lack of a triable issue of fact regarding the county's employment discipline of Plaintiffs.

Based on the record and the foregoing analysis, Summary Judgment for Plaintiff as to Count II of the Amended Complaint is hereby GRANTED.

## VI. LIBERTY INTEREST CLAIM

■ In the Amended Complaint, Plaintiff Michael Natale alleges that in the final disciplinary action against him, the Defendants made false and stigmatizing statements concerning him and the reasons for his employment termination. (Amended Complaint, ¶ 61 & ¶ 62). Plaintiff further claims that "Prior to and after publishing these statements, Defendants have failed to give Plaintiff a meaningful opportunity to clear his name" (Amended Complaint, ¶ 65) and thus that Plaintiff's liberty interest in his reputation has been unconstitutionally violated.

The Eleventh Circuit has established a six-part test by which to evaluate whether the deprivation of an individuals' liberty interest has occurred without adequate due process. This standard requires that the plaintiff prove: (1) a false statement; (2) of a stigmatizing nature; (3) attending a government employee's discharge; (4) made public; (5) by the governmental employer; (6) without a meaningful opportunity for employee name clearing. *Buxton v. City of Plant City, Florida,* 871 F.2d 1037, 1042–43 (11th Cir.1989). For the purposes of this Motion for Summary Judgment, Defendants claim that "[w]hile it is doubtful that Plaintiff Natale can satisfy elements 1–5, for purposes of this summary judgment, Defendant Broward County contends there are no set of facts upon which Plaintiff Natale can rely upon to establish the sixth element, i.e., that Plaintiff Natale was without a meaningful opportunity for employee name clearing." (Defendant's Motion for Summary Judgment And Memorandum of Law in Support Thereof, p. 17). Thus, for the purposes of its summary judgment analysis, the Court will focus on the sixth element of the *Buxton* analysis as well.

■ In *Buxton,* the court articulated the minimum constitutional requirements for due process where a liberty interest arising from reputational damage is raised. Such due process requires a "name clearing hearing;" that is, "the opportunity for a post-termination name-clearing hearing when stigmatizing information is made part of the public records, or otherwise published. Notice of the right to such a hearing is required" *Buxton,* 871 F.2d at 1043. The goal of such a hearing is to "provide the person an opportunity to clear his name" *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972) and to provide "an

opportunity to refute the charge" *Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 883, 51 L.Ed.2d 92 (1977).

In their Motion for Summary Judgment, Defendants argue that the Collective Bargaining Agreement contains a grievance procedure, Article 15 of the Collective Bargaining Agreement, which creates a procedure of internal steps in which a grievant may be heard, culminating in the option of binding arbitration by an impartial decisionmaker (Defendant's Motion for Summary Judgment, pp. 17–18) and that at each stage in the procedure, the grievant has the opportunity to present testimony and witnesses to clear his name (Defendant's Motion for Summary Judgment, p. 18). Defendants argue that these procedures provide the constitutionally mandated opportunity to clear his name.

Plaintiff does not dispute the availability of internal grievance procedures of which he has notice and in which he has the opportunity to present testimony and witnesses to clear his name, but contends that *Buxton* explicitly disallowed state procedures as an adequate remedy for a violation of an individual's reputational due process interest (Plaintiff's Response and Memorandum of Law to Defendant's Motion for Summary Judgment, p. 11). Plaintiff argues that in *Buxton*, the Eleventh Circuit "explicitly held that otherwise available state remedies are inconsequential to a violation of an individual's substantive liberty interest ... The government may not violate an individual's constitutionally protected liberty interest, and then attempt to nullify that substantive violation by claiming adequate state remedies." (Plaintiff's Response and Memorandum of Law to Defendant's Motion for Summary Judgment, p. 11).

In *Buxton*, the holding to which Plaintiff refers states, "The City of Plant City, Florida, has a grievance procedure that was apparently available to Buxton. His failure to utilize that procedure is of no moment at this time because we speak here of what is constitutionally required when the liberty interest is implicated, not what may or may not have been available to Buxton." *Buxton*, 871 F.2d at 1046. This Court does not read the above-mentioned paragraph as establishing that otherwise available state remedies are "inconsequential" to a violation of an individual's substantive liberty interest and thus should not be considered in a due process analysis. Such a reading would contradict clear precedent establishing that state remedies—such as the constitutionally required post-termination hearing to clear one's name—are indeed significant. Rather, what *Buxton* stands for is the proposition that there is an independent, minimal constitutional requirement of a post-termination name-clearing hearing that is implicated regardless of the availability of state procedures; such state procedures may fulfill the due process requirement but must be examined carefully to ensure that they in fact do so. This interpretation is supported by the fact that the Court of Appeals remanded the case to the district court to determine "issues involving waiver of the post-termination hearing and the effect of the release" *Buxton*, 871 F.2d 1037, 1046, thus indicating that an independent analysis of the validity of the state procedures was in order.

Plaintiff also cites *Foster v. Jackson County*, 895 F.Supp. 301 (N.D.Fla.1995) to support his interpretation of the due process requirements for violation of an individual's liberty interest. *Foster* underscores the necessity of "a hearing at which the [the plaintiff] has a chance to clear his name" *Foster*, 895 F.Supp. at 305, but addressed the situation in which the plaintiff did not receive a notice of termination and thus did not receive the constitutionally required notice of his right to a name-clearing hearing.

The situation in this case is quite different; it is uncontested that at all stages in the termination procedure, Plaintiff Natale was afforded multiple opportunities to clear his name. Plaintiff was notified in writing of his termination and signed an acknowledgment of receipt of said notice on July 3, 1997, and included in the termination notice was a notice of his right to contest statements and incidents through the applicable Grievance Procedure. (Exhibit D of Defendant's Notice of Filing In Support of its Motion for Summary Judgment). Plaintiff filed a Grievance Form on July 9, 1996 after his termination, claiming he was unjustly terminated.

He received a Step III hearing as a result of this grievance, at which time he was permitted to present testimony or evidence to clear his name. (Exhibit H of Defendant's Notice of Filing In Support of its Motion for Summary Judgment). Plaintiff then submitted to binding arbitration concerning the Step III decision upholding the termination decision. At that arbitration hearing, Plaintiff was once again permitted to call witnesses and present evidence to clear his name and despite the continued finding of "employee wrongdoing," ultimately his punishment was reduced, thus indicating that Plaintiff's attempts to make his case and clear his name were to of some avail (Exhibit J of Defendant's Notice of Filing In Support of its Motion for Summary Judgment).

The extensive, multiple step procedure established by the State and utilized by the Plaintiff offered the Plaintiff more than one opportunity to "clear his name" in accordance with the constitutional prerequisites articulated in *Buxton.* Similar procedural safeguards employed in the context of a discharged city employee who received a notice of the post-termination hearing and at least one post-termination hearing at which he was able to tell his side of the story and clear his name were held to be adequate for summary judgment purposes by this District in *Chernov v. City of Hollywood,* 819 F.Supp. 1070 (S.D.Fla.1993), *aff'd* 19 F.3d 1446 (11th Cir. 1994) Accordingly, this Court finds that as a matter of law the State procedures provided a constitutionally adequate "name clearing" hearing for Plaintiff Michael Natale and as there is no genuine issue of material fact to submit to a jury on Count III of the Complaint, summary judgment for the Defendant as to Count III is hereby GRANTED.

## VII. CONCLUSION

Therefore, upon careful consideration of the record and for the reasons discussed above, it is hereby ORDERED AND ADJUDGED that Defendant Broward County's Motion for Summary Judgment is hereby GRANTED as to all counts of the Amended Complaint.