[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-15722

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 1, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-22383-CV-JLK

JOSE RAFAEL DEPRADO,

                                                    Plaintiff-Appellant,

versus

CITY OF MIAMI,
a municipality, Manny Diaz, Mayor,
RAUL MARTINEZ,

                                                    Defendants-Appellees,

MARILYN GONZALEZ,

                                                    Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 1, 2008)**

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Miami city police officer Jose Rafael Deprado appeals from the district court's entry of final summary judgment in favor of his employer, the City of Miami, and the former chief of police, Raul Martinez, (collectively, the "City"), on Deprado's claim for damages under 42 U.S.C. § 1983 that his First Amendment right to speak on a matter of public concern was violated. Deprado alleged that after he testified before a federal grand jury about police misconduct involving evidence tampering, the City retaliated by transferring him to a different unit, docking him ten hours of earned vacation pay, and reprimanding him. On appeal, Deprado challenges the district court's conclusions that: (1) he did not engage in protected speech; (2) his transfer did not amount to an adverse action; and (3) the City would have taken the same actions even without his protected speech. After thorough review of this record, we affirm.

We review grants of summary judgment de novo. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003). Summary judgment is proper when the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We resolve all reasonable doubts and make all justifiable inferences in the non-movant's favor. Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir.

2000).

Under First Amendment jurisprudence, the City, as a government employer, may not retaliate against Deprado, its employee, for engaging in protected speech. Johnson v. Clifton, 74 F.3d 1087, 1092 (11th Cir. 1996) (citing Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989)). Retaliation occurs when a government employer "takes an adverse employment action that is likely to chill the exercise of constitutionally protected speech." Stavropoulos v. Firestone, 361 F.3d 610, 618 (11th Cir. 2004). Where the employer denies that the employee was retaliated against in violation of his First Amendment rights, we engage in a four-stage analysis: "(1) the employee's speech must involve a matter of public concern in order for it to be protected, (2) the employee's first amendment interests must outweigh the public employer's interest in efficiency . . . , (3) the employee must have been disciplined, in substantial part, because of the protected speech, and (4) the public employer must not be able to prove by a preponderance of the evidence that it would have disciplined the employee even without the protected speech." Johnson, 74 F.3d at 1092 (citing Bryson, 888 F.2d at 1565-66); see also Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951, 1957 (2006).

Because Deprado must satisfy all four parts of this test to recover, we need not reach the difficult questions of whether his speech was protected, nor whether

3

his First Amendment interests outweighed the public employer's interests.  See

Harris v. Shelby County Bd. of Educ., 99 F.3d 1078, 1086 (11th Cir. 1996)

(addressing only last prong of test because it was dispositive for purposes of

affirming summary judgment ruling).  Instead, we need address only whether the

City would have engaged in the alleged retaliation, if any, even without the

protected speech.

Deprado specifically claimed that because of his protected speech, he

suffered three adverse actions: a reprimand, a loss of ten hours of leave-time, and a

transfer from the Training Unit to the Patrol Unit.  The City, in response, argued

that its actions were explained fully by the following undisputed facts.  On June 6,

2001, when Deprado was assigned to the Training Unit, he took part in a "practical

joke."  Specifically, Deprado was doing pull-ups in the Training Center's gym,

when two other officers sent in a recruit under the guise that Deprado needed to

speak to him; when the recruit arrived, Deprado was totally nude from the waist

down.  This "practical joke" violated Departmental Orders, as Deprado agrees.

Following the practical joke, a disciplinary package was prepared recommending

that all three officers involved receive written reprimands and forfeit ten hours of

leave time. Deprado was also transferred out of the Training Unit to the Patrol

Unit. The two other officers involved remained fully clothed at all times and were

4

not transferred.

Based on this record, the City contended it could prove overwhelmingly that it would have disciplined Deprado even without the protected speech. Deprado has raised no genuine issue of material fact as to this matter. Indeed, Deprado presented no evidence to dispute that all three officers engaged in the prank received a written reprimand and ten-hour forfeiture. He did not dispute that the other two officers were reprimanded; and he even conceded that "practical jokes [are] technically in violation of departmental orders." Thus, there is no record evidence to dispute that Deprado "would have been disciplined [with the reprimand and forfeiture] regardless of engaging in any free speech, and . . . produced no convincing evidence from which a reasonable jury could conclude that the [City] acted outside of its discretion as an employer in its punishment." Natale v. Broward County, 987 F. Supp. 926, 937 (S.D. Fla. 1997); see also Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 286 (1977).

As for the transfer, Deprado also presented no evidence to dispute that the City would have transferred him even without his speech, since only he, among the officers, removed his pants during the prank. Deprado did conclusorily assert that practical jokes "are common in the Training Unit and no one has ever been disciplined for participating in them prior to this incident and there were no

5

warnings that practical jokes would not be permitted in the Training Unit." But besides offering this general allegation -- which is insufficient to defeat summary judgment, see Leigh v. Warner Brothers, Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) -- Deprado presented no evidence of other practical jokes nor other practical jokesters who had not been disciplined.

Deprado also alleged that his supervisor, Lt. Gonzalez, said she hated "snitches" and wanted to fire him, but Deprado did not dispute the evidence that Gonzalez was not involved in the decision to transfer him. Put simply, Deprado produced no convincing evidence from which a reasonable jury could conclude that the City acted outside of its discretion in transferring him, and him alone, for staging a practical joke in which only he was nude from the waist down in front of a recruit.

But, even if the City could not conclusively establish that it would have transferred him without his protected speech, the transfer still did not amount to an adverse action. "To be considered an adverse employment action in a First Amendment retaliation case, the complained-of action must involve an important condition of employment," such that the alleged action would likely chill the exercise of constitutionally protected speech. Stavropoulos, 361 F.3d at 619. Any conduct that "alters the employee's compensation, terms, conditions, or privileges

6

of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee" is an adverse employment action. Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (quotation marks and citation omitted).[1]

Deprado claimed that the transfer made him ineligible for a 2% incentive pay, lowered his prestige, and deprived him of travel opportunities and priority to attend continuing education courses to improve his status as an employee and his desirability to prospective employers after retirement. But, as for the 2% incentive pay, Deprado admitted that the supplement was not instituted until six months after his transfer. While "specific future harm" may be an adverse action, future harm that is wholly unforeseen cannot be actionable, since neither Deprado nor the City could have known at the time of the transfer that Deprado would be deprived of this 2% supplement, and, plainly, the deprivation of a not-yet-existent supplement could not have chilled the exercise of constitutionally protected speech.

As for Deprado's claimed loss of prestige, Burlington recognized an adverse action where a plaintiff's prior job was more "prestigious." 126 S. Ct. at 2417.

---

[1] We have held that courts may apply the Title VII definition of adverse employment action to free speech retaliation claims. Stavropoulos, 361 F.3d at 619. The Supreme Court has recently extended the scope of adverse employment actions, in Title VII, "beyond workplace-related or employment-related retaliatory acts and harm," so that an employee need only show that "a reasonable employee would have found the challenged action materially adverse." Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2414-15 (2006). But Burlington has little bearing here since Deprado did not allege any non-employment-related adverse actions.

7

However, unlike the facts presented in Burlington, Deprado offered no evidence that the Patrol Unit job was more arduous or required more qualifications, or that anyone besides him objectively considered it a better job. This Court has held in the Title VII context:

> Congress simply did not intend for Title VII to be implicated where so comparatively little is at stake . . . . [That he felt] some blow to his professional image when he was removed as OIC . . . simply [is] not enough to prevail on this record . . . . In the vast majority of instances . . . we think an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress . . . .

Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1240-45 (11th Cir. 2001); see also Burlington, 126 S. Ct. at 2415 ("We speak of material adversity because we believe it is important to separate significant from trivial harms . . . . We refer to reactions of a reasonable employee because we believe that the provision's standard for judging harm must be objective.") (emphases in original).

Finally, as for his loss of educational and travel opportunities, Deprado presented no evidence of any specific opportunities he lost, nor that he sought and was denied any opportunities. Deprado had 16 years of service in the Training Unit, and presumably acquired experience during that time that would make him eligible for future positions, both within the department and elsewhere. In addition, Deprado admitted that he is fully eligible for promotional opportunities in

8

the Patrol Unit, and in fact, has received three salary increases since transferring. Accordingly, "this claim of harm is made only at the highest order of abstraction," Davis, 245 F.3d at 1245, and plainly does not establish an adverse action.

In short, Deprado raised no genuine issue of material fact as to the City's showing that his transfer did not amount to an adverse action, nor did he satisfy all four prongs of the First Amendment retaliation test. Accordingly, we affirm.

**AFFIRMED**.