United States Court of Appeals,

Eleventh Circuit.

Nos. 94-3179, 94-3180 and 94-3184.

George JOHNSON, Plaintiff,

Sylvia Hill, Raymond Griffin, Plaintiffs-Appellees,

v.

Wayland CLIFTON, Defendant-Appellant,

City of Gainesville, Defendant.

Eugene ROSS, Plaintiff-Appellee,

v.

Wayland CLIFTON, Defendant-Appellant,

City of Gainesville, Defendant,

George Johnson, Respondent.

Sylvia HILL, Plaintiff-Appellee,

v.

Wayland CLIFTON, individually and as the Chief of Police and agent for the City of Gainesville, Defendant-Appellant,

City of Gainesville, Defendant.

Jan. 26, 1996.

Appeals from the United States District Court for the Northern District of Florida. (No. 91-10121 MMP) Maurice Mitchell Paul, Chief Judge.

Before ANDERSON and BLACK, Circuit Judges, and FAY, Senior Circuit Judge.

FAY, Senior Circuit Judge:

This appeal arises from the District Court's denial of qualified immunity and denial of summary judgment to Wayland Clifton, Jr., the Police Chief for the City of Gainesville. Three former police officers, Sylvia Hill, Eugene Ross, and Raymond

Griffin, brought suit against Clifton, alleging that they were disciplined for testifying about Clifton before a grand jury. Because Clifton is entitled to qualified immunity, we reverse.

## I. BACKGROUND

Hill, Ross, and Griffin worked together in Internal Affairs at the Gainesville Police Department. Hill was the Unit Commander; Ross was Hill's immediate supervisor, while Griffin reported to Hill. Hill, Ross, and Griffin allege that Internal Affairs began an investigation of alleged misconduct by a group within the police department called Hallucinations 2000, and gave proper notice to the City Manager that Clifton might be involved; in response to this investigation, Clifton transferred the plaintiffs from Internal Affairs; after an audit of Internal Affairs revealed no wrongdoing, Clifton stated that the investigation was concluded and nothing would come of it; Clifton offered to transfer the plaintiffs to any position within the department that they desired; State Attorney Len Register then contacted Hill and asked who he should subpoena to enable the grand jury to make a decision as to whether the police department should be investigated regarding Hallucinations 2000; the plaintiffs testified before the grand jury regarding Hallucinations 2000; in retaliation for the grand jury testimony, Clifton re-opened the investigation into Internal Affairs and then disciplined the plaintiffs.

Clifton denies that he retaliated against the plaintiffs for their testimony before the grand jury. He claims that the plaintiffs initiated a secret investigation without notifying the City Manager; that he was not involved in any way with

Hallucinations 2000 and that the group turned out to be innocuous in any event; that the grand jury and the independent investigator concluded that he had done nothing wrong; that an audit of Internal Affairs showed that investigative files were missing, some cases had not been completed, some investigations were untimely or unauthorized, and certain direct orders had been ignored; that in response to that misconduct he disciplined the plaintiffs; and that the plaintiffs had only gone to the grand jury in order to gain leverage over him and prevent the deserved discipline rather than out of any public concern about possible corruption.

It is undisputed that Hill was told in April of 1991, prior to any allegations or investigation concerning Hallucinations 2000, that she would be transferred from Internal Affairs; that in early April she was transferred; that in early April Ross and Griffin were "locked out" of Internal Affairs so that an audit could be conducted; that the audit was concluded in June; that in July Clifton offered to transfer Hill to any position within the police department (except Internal Affairs) if that was the end of the matter; that the plaintiffs went to the grand jury anyway; that after the plaintiffs went to the grand jury, the audit findings were reviewed and misconduct charges were filed.

Hill, Ross, and Griffin brought suit against Clifton and the City of Gainesville. The District Court granted summary judgment to the City on all charges, but denied Clifton's motion for summary judgment based on qualified immunity. Clifton immediately appealed the denial of qualified immunity.

## II. STANDARD OF REVIEW

We review *de novo* a District Court's ruling that a public official's conduct violated clearly established law so that the official is not entitled to qualified immunity. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985).

Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The evidence must be viewed in the light most favorable to the non-moving party. *Augusta Iron and Steel Works, Inc. v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988).

### III. ANALYSIS

#### A. Jurisdiction: *Johnson v. Jones*

Public officials are entitled to qualified immunity from "liability for civil damages insofar as their conduct does not violate clearly established ... rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A public official may immediately appeal a denial of qualified immunity where the disputed issue involves whether or not the defendant's conduct constitutes a violation of clearly established law. *Mitchell,* 472 U.S. at 528, 105 S.Ct. at 2816-17. The public official may appeal such a decision because it is considered a final, collateral order regarding qualified immunity. *Id.* at 528, 105 S.Ct. at 2816-17.

In *Johnson v. Jones,* --- U.S. ----, 115 S.Ct. 2151, 132

L.Ed.2d 238 (1995), the Supreme Court further addressed the law of summary judgment in the context of qualified immunity. The issue in *Johnson* was whether there was any evidence in the record to support the District Court's ruling that a reasonable fact finder could find that the public officials were involved in the plaintiff's beating.[1] *Id.* at ---- - ----, 115 S.Ct. at 2153-54. The defendants admitted that such a beating was unconstitutional and violated clearly established law; they only argued that the District Court had erred when it found a genuine issue of material fact in regard to their involvement in the unconstitutional conduct. *Id.* at ----, 115 S.Ct. at 2154. The Supreme Court held that such a ruling by the District Court could not be appealed as a final, collateral order. *Id.* at ---- - ----, 115 S.Ct. at 2156-58.

It seems clear to us that the Supreme Court was not changing the well-established law of qualified immunity in the context of summary judgment, just elaborating on it. When faced with a motion for summary judgment based on qualified immunity, the District Court must determine whether there is a genuine issue of material fact as to whether the defendant committed conduct that violated clearly established law. This analysis can be broken down into two parts. First, what was the official's conduct, based on the pleadings, depositions, and affidavits, when viewed in the light most favorable to the non-moving party? Second, could a reasonable public official have believed that such conduct was lawful based on

---

[1]Or phrased another way, whether there was enough evidence to create a genuine issue of material fact as to whether the public officials were involved in the beating.

clearly established law?

The resolution of the second issue constitutes a final, collateral order. *Mitchell* at 528, 105 S.Ct. at 2816-17. A ruling on such an issue is immediately appealable. *Id.* When such a ruling is appealable, the first issue—the factual issue—may be addressed by an appellate court because it is a part of the core qualified immunity analysis. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987). However, if only the first issue is appealed, namely what conduct the defendant engaged in based on the evidence viewed in the light most favorable to the plaintiff, *and not* the second issue, namely whether that conduct violated clearly established law, then the appellate court has no jurisdiction to hear the case. *See Johnson,* --- U.S. at ----, 115 S.Ct. at 2159. The first issue—the factual issue—can only be heard because it is a necessary part of the core qualified immunity analysis, the resolution of which constitutes a final, collateral order; when the core qualified immunity issue is not appealed, then the factual issue may not be either. *Id.*

When the core qualified immunity issue is raised on appeal, the appellate court has two options regarding how to deal with the factual issue. "When faced with an argument that the district court mistakenly identified clearly established law, the court of appeals can simply take, as given, the facts that the district court assumed when it denied summary judgment for that (purely legal) reason." *Id.* at ----, 115 S.Ct. at 2159. Or, the court of appeals can conduct its own review of the record in the light most favorable to the nonmoving party. First, the appellate court may

have to do so because the trial court failed to state the facts it assumed. *Id.* Second, the appellate court can do so because such a determination is part of the core qualified immunity analysis, as discussed above. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039-40. Third, even if such a determination were not part of the core qualified immunity analysis, it would be "inextricably intertwined" with that analysis and within the appellate court's pendent jurisdiction. *Swint v. Chambers County Com'n,* --- U.S. ----, ----, 115 S.Ct. 1203, 1209, 131 L.Ed.2d 60 (1995). *See also Johnson,* --- U.S. at ----, 115 S.Ct. at 2159. Of course, if there is any evidence in the record to support the District Court's ruling that there was a genuine issue of material fact as to whether the official actually engaged in the conduct that violated clearly established law, the District Court's factual ruling will not be disturbed. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

## B. Qualified Immunity

In the qualified immunity context, the plaintiffs have the burden of proving that a reasonable public official would not have believed that his actions were lawful, in light of clearly established law. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039-40. Clifton argues both that the District Court wrongly applied the clearly established law to the facts it found and that the record does not support some of the facts the District Court found, even when viewed in the light most favorable to the plaintiffs.

## 1. The Factual Issue

Even when viewing the record in the light most favorable to the plaintiffs, there is no genuine dispute regarding the following

material facts:  1) while the plaintiffs were still in Internal Affairs, Clifton told Hill that he was not happy with some of the work product coming out of Internal Affairs;  2) Clifton transferred the plaintiffs out of Internal Affairs prior to the point at which they testified before the grand jury;  3) Clifton, in consultation with City Manager White, ordered an audit of Internal Affairs prior to the plaintiffs testifying before the grand jury;  4) the plaintiffs knew they were being investigated;  5) the plaintiffs went to the grand jury after they knew they were being investigated;  6) the plaintiffs would likely be in a better employment position if the grand jury indicted Clifton.[2]

## 2. Clearly Established Law

A government employer may not retaliate against a public employee for engaging in protected speech.  *Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir.1989).  Where the public employer denies that the employee was disciplined in violation of that employee's first amendment rights, the court engages in a four-stage analysis:  1) the employee's speech must involve a matter of public concern in order for it to be protected, 2) the employee's first amendment interests must outweigh the public employer's interest in efficiency (the *Pickering*[3] balancing test),

---

[2]It is true that Clifton had offered at least Hill the chance to be transferred anywhere she wanted other than Internal Affairs.  However, Hill wanted to be transferred back into Internal Affairs, and neither she nor the other plaintiffs reached any agreement with Clifton.  The only chance for the plaintiffs to receive what they wanted, then, was through a grand jury indictment or report.

[3]*Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

3) the employee must have been disciplined, in substantial part, because of the protected speech, and 4) the public employer must not be able to prove by a preponderance of the evidence that it would have disciplined the employee even without the protected speech. *Bryson,* 888 F.2d at 1565-66.

Whether a statement involves a matter of public concern is a question of law for the judge, who must consider the purpose of the employee's speech by analyzing "the content, form, and context" of the statement. *Id. See also Ferrara v. Mills,* 781 F.2d 1508, 1513 (11th Cir.1986). If the relevant speech was motivated by personal concerns instead of public concerns then it is not protected by the First Amendment in this context. *Connick v. Myers,* 461 U.S. 138, 147-48, 103 S.Ct. 1684, 1690-91, 75 L.Ed.2d 708 (1983). The issue here is not whether the employee is entitled to make the statement, but rather whether the employee is entitled to retain employment and avoid discipline after making the statement. The Supreme Court has decided that only statements motivated by public concern deserve such protection because otherwise every criticism of a public official and every employment dispute would "plant the seed of a constitutional case." *Id.* at 149, 103 S.Ct. at 1691. "[G]overnment officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Id.* at 146, 103 S.Ct. at 1690.

Furthermore, even if the employee's speech touches upon a matter of public concern, a *Pickering* balancing must be conducted to determine whether the government office was justified in discharging the employee. *Connick,* 461 U.S. at 149, 103 S.Ct. at

1691.  A public official is entitled to qualified immunity, except in "the extraordinary case where the *Pickering* balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful."  *Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1323 (11th Cir.1989).

In *Morgan v. Ford,* 6 F.3d 750 (11th Cir.1993), an employee was fired after complaining about sexual harassment.  This Court concluded that her statement regarding sexual harassment did not involve a matter of public concern because, even though sexual harassment is a matter of "important social interest," the purpose of the statement was not to raise issues of public concern, but rather to further her own "entirely rational self-interest."  *Id.* at 755.

In the instant case, possible police corruption is obviously a matter of important social interest;  however, in this qualified immunity context, we must focus on what Clifton knew.  Even when viewing the evidence in the light most favorable to the plaintiffs, it is clear that Clifton knew the plaintiffs went to the grand jury after they knew they were being investigated, and hoped to gain from a grand jury indictment or report.  It is obvious to us that Clifton viewed their actions as intended to put pressure on him to prevent him from following through with the investigation which had already commenced and which led to the ultimate discipline.  In light of the information available to Clifton, we cannot conclude that clearly established law told him that the plaintiffs' grand jury testimony was a matter of public concern rather than personal gain.  We know of no case which might have clearly told Clifton

that he could not take the disciplinary action indicated by an investigation which was initiated before he even knew about the allegedly protected speech, and in circumstances where the public concern implication was doubtful.  Thus, we conclude that Clifton is entitled to qualified immunity.

## IV. CONCLUSION

Applying the analysis required by Supreme Court precedent, we conclude that Clifton's conduct did not violate clearly established law and so he is entitled to the protection provided by qualified immunity.  We vacate the order of the District Court and remand with instructions that summary judgment be entered in favor of the appellant.

VACATED and REMANDED with instructions.