**NATIONAL ABORTION FEDERATION,**
Plaintiff,

v.

**METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY,**
Defendant.

Civil Action No. 1:99–CV–1090–CAP.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 7, 2000.

one city in which the NAF sought to run its ads.

Lynn Bregman, Wilmer Cutler & Pickering, Washington, DC, Lynn R. Charytan, Wilmer Cutler & Pickering, Washington, DC, Patricia Anne Gorham, Sutherland Asbill & Brennan, Atlanta, David G. Gray, Wilmer Cutler & Pickering, Washington, DC, David M. Kreeger, Wilmer Cutler & Pickering, Washington, DC, Charles T. Lester, Jr., Sutherland Asbill & Brennan, Atlanta, Kimberly A. Parker, Wilmer Cutler & Pickering, Washington, DC, William R. Richardson, Jr., Wilmer Cutler & Pickering, Washington, DC, Julie Veach, Wilmer Cutler & Pickering, Washington, DC, for plaintiff.

Paul Arnold Howell, Jr., Pursley Howell Lowery & Meeks, Atlanta, GA, for defendant.

## ORDER

PANNELL, District Judge.

The plaintiff filed the instant action, alleging that the defendant violated its First and Fourteenth Amendment rights under 42 U.S.C.A. § 1983 by refusing to accept the plaintiff's advertisements for placement in the defendant's advertising spaces, and seeking a permanent injunction. The matter is before the court on the plaintiff's motion for summary judgment [Doc. No. 18–1] and the defendant's motion for summary judgment [Doc. No. 21–1].

## I. *FACTUAL DISCUSSION*

The plaintiff, the National Abortion Federation ("NAF") is a non-profit professional association of abortion services providers. One of the purposes of the NAF is to educate and communicate with the public about medical issues related to abortion. In March 1999, the NAF embarked on its first public service campaign. One part of this campaign was to run advertisements on city buses in several major metropolitan areas that would alert the public to the work of the NAF. Atlanta, Georgia, was

The defendant, Metropolitan Atlanta Rapid Transit Authority ("MARTA"), is a joint public instrumentality of the City of Atlanta and several counties which either contain or border the City of Atlanta. MARTA sells advertising space on the inside and outside of its buses and trains, in its rail and bus stations and shelters, and around its facilities. It sells this advertising space through two different companies. Transportation Displays, Inc. ("TDI") sells the spaces located within and without the buses and trains and within and without the bus and train stations. Outdoor Systems, Inc. ("OSI") sells the spaces located at bus stop shelters, which it erects and owns, but over which MARTA has at least some control concerning the ads that appear there.

The NAF submitted two different ads to TDI and OSI. The first is a black and white photo of a woman showing only her head turned sideways and the tops of her shoulders with copy that reads "Wife, Daughter, Mother" in large letters and "A few names women who've had an abortion actually deserve to be called" in smaller letters. It also includes text discussing statistics claiming that by age 45, nearly half of all women in America will have had an abortion. The point of the ad, according to the plaintiff, is to remove the negative stigma attached to having an abortion by suggesting that it is likely that someone the public knows and loves will have had one.

The second ad is a black and white photo of a woman, who appears to be a medical doctor, that reads "Our doctors have learned everything there is to know about making abortion safe" in large letters and "Except what to wear to work" in smaller letters. The ad also includes text discussing violent acts that have been committed against doctors for performing abortions. Both ads include the NAF logo and a toll-free telephone number which can be used to obtain more information

**1324**

about abortion or a referral to a qualified abortion provider.

MARTA rejected both of the NAF's ads citing its advertising policy as its reason. The relevant portion of MARTA's policy reads:

No advertising that supports or opposes any position in regard to a matter of public controversy shall be displayed in the Authority's stations, vehicles, or other facilities. For this purpose, a matter is considered to be one of public controversy if it is widely reported by the newspapers, television or radio stations, or other news media in the area served by the Authority, and it reasonably appears from such reports that the subject matter arouses strong feelings in a substantial number of people.

Following MARTA's rejection of its ads, the NAF filed the instant action.

## II. *LEGAL DISCUSSION*

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir.1996). The moving party's burden is discharged merely by " 'showing'—that is, pointing out to the District Court that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Clifton*, 74 F.3d at 1090.

Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2510. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.*

Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* In order for factual issues to be "genuine" they must have a real basis in the record. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Id.* (citations omitted).

To state a claim under 42 U.S.C. § 1983, a plaintiff must show that a person, acting under color of any statute, ordinance, regulation, custom, or usage, deprived him of a right, privilege, or immunity secured by the Constitution. The plaintiff bases its Section 1983 claim on its right to freedom of speech under the First Amendment and the Georgia Constitution, and on the privileges and immunities clause of the Fourteenth Amendment.

There is no dispute in this case that MARTA is a person within the meaning of the statute. There is also no dispute that MARTA was acting pursuant to a statute,

ordinance, regulation, custom, or usage, namely its advertising policy, and is, therefore, a state actor acting under color of law. The issue to be resolved on the parties' cross motions for summary judgment is whether MARTA deprived the NAF of a right, privilege, or immunity secured by the Constitution while it was acting under color of state law.

In order to resolve the issue of whether MARTA deprived the NAF of its constitutional rights, the court must first determine the relevant forum to which the NAF sought access. Once it does so, it must then determine what type of forum it is. There are essentially three types: traditional public forum, designated public forum, and non-public forum. Once the court decides these issues, it then applies the applicable level of scrutiny to the state's actions in deciding whether MARTA's restriction of the NAF's speech violated the NAF's constitutional rights.

### A. The Relevant Forum

■ Before the court can decide in what type of forum the speech occurred, it must first decide the relevant forum. A court determines the relevant forum by looking at the access that was sought by the complaining party. *Cornelius v. NAACP Legal Defense and Educational Fund*, Inc., 473 U.S. 788, 801, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985). In a case where a plaintiff sought to compel a city to accept political advertisements on city-owned buses, the Supreme Court held that only the advertising spaces on the outside of the buses were the relevant forum. *Lehman v. City of Shaker Heights*, 418 U.S. 298, 300, 94 S.Ct. 2714, 2715, 41 L.Ed.2d 770 (1974).

■ In the instant case, the NAF submitted its ads for placement within MARTA's buses and trains and on the bus shelters. The NAF contends that the access sought was access to all of MARTA's advertising, not just the specific areas for which it originally applied. MARTA argues that because it does not actually own the shelters serviced by OSI and because the NAF applied only for access to the interiors of MARTA's trains and buses, the relevant forum is only the inside of the trains and buses. The evidence before the court shows that the NAF initially sought access only to the inside of the trains and buses and to the shelters, but that it subsequently requested access to all of MARTA's advertising. Further the court finds MARTA's argument that the bus shelters should not be included in the relevant forum to be unpersuasive. Even though OSI owns the physical structures, MARTA maintains control over the content of the advertising displayed therein. Therefore, the court finds that the relevant forum for purposes of its forum analysis is all advertising space controlled by MARTA on its buses and trains, in its stations and surrounding areas, and in the bus shelters owned by OSI.

### B. The Type of Forum

■ For purposes of First Amendment analysis, government property is generally defined as a traditional public forum, a designated public forum, or a non-public forum. *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). A traditional public forum is a place which by "long tradition or by government fiat ha[s] been devoted to assembly and debate." *Id.* at 45, 103 S.Ct. at 954. A designated public forum arises when the government designates a forum for use by the public at large for purposes of assembly and speech, for use by certain speakers, or for the discussion of certain subjects. *Id.* at 45–46, n. 7, 103 S.Ct. at 955, n. 7. The Supreme Court differentiates between designated forums that are generally open to expressive activity and limited open forums that are limited to certain types of expressive activity or subjects. *Id.* The last type of forum, non-public, is a forum that the government has closed to public discourse and assembly. *Id.*

Neither party contends that the relevant forum in the instant case is a traditional public forum. The NAF contends that by accepting advertising from public interest groups, religious organizations, and nonprofits, as well as commercial advertising, MARTA has opened its advertising space to the public for general discourse on a wide range of topics, creating a designated public forum. MARTA, however, argues that it has maintained control over the content of the advertising it accepts and consistently applies its advertising policy. If true, then the advertising space is either a non-public forum or, at most, a limited public forum.

 MARTA cannot create a public forum by failing to act or by allowing limited public discourse, but, rather, it must affirmatively and intentionally open its forum to public discourse. *Perry*, 460 U.S. at 46, 103 S.Ct. at 955. The court must look at the policy and practice of MARTA to determine whether it intended to create a public forum. *Cornelius*, 473 U.S. at 802, 105 S.Ct. at 3449. The court must also take into account the "nature of the property and its compatibility with expressive activity" to determine the government's intent. *Id.*

 The relevant forum in the instant case is MARTA's advertising space. The nature of advertising space is to communicate information to the public. As can be seen by the wide variety of creative advertising today, such space is very compatible with expressive activity. The court finds that MARTA's advertising space is a type of forum that is conducive to being opened as a public forum if it was so intended. Therefore, the court must consider MARTA's policy and practice to determine if MARTA intended such a result.

MARTA's written policy, as stated above, is not to accept political ads or ads that support or oppose any position in regard to a matter of public controversy. In its summary judgment brief, MARTA sets forth the following policy goals: (1) allow MARTA to maintain a neutral position on matters of public controversy without being identified with the position of either side in such a matter; (2) preserve its reputation; (3) keep from making MARTA's passengers uncomfortable and dissuading them from riding MARTA's buses and trains, thus defeating MARTA's purpose for existing; (4) keep advertisers from withdrawing their ads; and (5) protect MARTA's property, employees and passengers from violence. See Def.'s Brief in Supp. of MARTA's Mot. for Sum. Judg. Pgs. 7–8. These policy goals suggest that MARTA did not intend to open its advertising areas for public discourse on all topics, but only opened these forums for commercial purposes or, by implication, for the purpose of discourse on topics that are not matters of public controversy or which refer to political elections, referenda, etc.

However, MARTA's practice has been somewhat inconsistent with its written policy. While the court finds that MARTA has been consistent with regard to rejecting political advertising, it has not been as consistent with regard to other types of ads. The court finds that, at best, MARTA has created a limited public forum which excludes only political speech. The evidence shows that MARTA has accepted advertising on subjects ranging from AIDS awareness to racial and religious tolerance to homosexual rights. While there has been no evidence presented that shows MARTA accepted advertising by any specific pro-life organizations, it has permitted advertising for pregnancy counseling and adoption services. By permitting these various forms of public interest speech and speech by non-profit entities, MARTA has opened its advertising forum to such speech and, as discussed below, strict scrutiny applies to MARTA's rejection of the NAF ads.

## C. Strict Scrutiny Analysis of MARTA's Rejection of the NAF Ads

 "If the government excludes a speaker who falls within the class to which

a designated public forum is made generally available, its action is subject to strict scrutiny." *Arkansas Educational Television Commission v. Forbes*, 523 U.S. 666, 677, 118 S.Ct. 1633, 1641, 140 L.Ed.2d 875 (1998). Under a strict scrutiny analysis, MARTA must show that its rejection of the NAF ads was necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Widmar v. Vincent*, 454 U.S. 263, 270, 102 S.Ct. 269, 274, 70 L.Ed.2d 440 (1981).

■ The only interest cited by MARTA that the court finds compelling is its interest in protecting its employees and passengers from violence. The NAF has averred that other transit systems in other cities are currently running the ads at issue without incident. MARTA has not presented any evidence that there is a threat of violence if it runs the NAF ads, that violence has resulted in other cities, or that somehow running the ads in Atlanta presents a greater risk. While the court recognizes that the state need not always wait for violence or danger to manifest itself in order to take steps necessary to prevent it, the court finds that whatever danger is present in the instant case is too remote to rise to the level of a compelling state interest.

Because MARTA's rejection of the NAF ads was not necessary to serve a compelling state interest, the court holds that MARTA should have accepted the NAF's advertisements. The court finds that MARTA's rejection of the NAF's ads was content based. Content based restrictions in a public forum are limited to time, place and manner restrictions. While MARTA may reject ads such as the NAF's, or future ads from pro-life organizations, if they are obscene, vulgar, repulsive, etc., it may not reject the ads based on their content.

**D. *Void for Vagueness Doctrine and Overbreadth***

**(1) Vagueness**

The NAF contends that, regardless of the type of forum involved, MARTA's policy is overly broad and vague in that it puts too much discretion in the hands of MARTA officials in rejecting advertisements. MARTA contends that its written policy sets forth neutral minimum standards which direct its officials' decisions.

■ The void for vagueness doctrine serves two main purposes: (1) to provide fair notice of prohibitions so that individuals may steer clear of unlawful conduct; and (2) to prevent arbitrary and discriminatory enforcement of laws. *Mason v. Florida Bar*, 208 F.3d 952, 959 (11th Cir. 2000). Vague laws improperly delegate basic policy matters to individuals with no policy-making authority for resolution in a subjective, case-by-case manner which creates the risk that the individual will either discriminate, consciously or unconsciously, against those views with which it disagrees or will apply the policy arbitrarily. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). "If arbitrary and discriminatory enforcement is to be prevented, [the government's policies] must provide explicit standards for those who apply them." *Id.*

■ The court finds that MARTA's written advertising policy is vague and unenforceable. MARTA's policy restricts access to its advertising space to those ads which do not support or oppose any position in regard to a matter of public controversy. The policy does define the term "public controversy," but therein lies the problem. "Public controversy" is defined as a matter which is (1) widely reported by the newspapers, television or radio stations, or other news media in the area served by the Authority, and (2) it reasonably appears from such reports that the subject matter arouses strong feelings in a substantial number of people. The court finds that the phrases "widely reported," "reasonably appears," "arouses strong feelings," and "substantial number of people," are constitutionally vague. These

subjective standards put too much discretion into the hands of MARTA officials.

In fact, the NAF has presented evidence that several different MARTA officials have interpreted the policy differently. One MARTA official, Alice Wiggins testified in her deposition that the term "public controversy" included ads supporting or opposing religion. See Dep. Of Alice Wiggins p. 98. However, Chuck Schadl, Ms. Wiggins' predecessor at MARTA, approved religious ads for inclusion on MARTA's advertising space. Ms. Wiggins also testified that she would have removed the words "Use a condom every time" from two safe sex ads that were reviewed and approved by Mr. Schadl. While different applications by different officials may not always mean that the policy or statute is vague, in the instant matter, it illustrates the subjective and arbitrary nature of the policy and suggests that there is a potential for abuse. Therefore, the court finds that MARTA's advertising policy is void for vagueness.

#### (2) Overbreadth

The NAF also contends that MARTA's policy is overly broad and void on its face. Facial invalidation of a policy such as this is an extreme measure and "courts should be cautious in utilizing this drastic remedy." *Gay, Lesbian, Bisexual Alliance v. Pryor*, 110 F.3d 1543, 1550 (11th Cir.1997). In general, a statute should be "declared invalid to the extent that it reaches too far, but otherwise left intact." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504, 105 S.Ct. 2794, 2802, 86 L.Ed.2d 394 (1985). The court holds that the statute does reach too far in that it can be interpreted to include a wide range of matters that go beyond what is needed to protect any possible interests of MARTA. For example, under the definition of "public controversy" contained in MARTA's advertising policy, a MARTA official could reject ads promoting the Atlanta Braves. The Braves are widely reported on by the local media and they

certainly arouse strong feelings in a great number of people. However, since the court has already declared the policy void for vagueness, it need not decide to what extent it is overly broad.

#### (3) *The NAF's Request for Permanent Injunction*

"The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404, 94 L.Ed.2d 542 (1987). Adjusting the standard accordingly, a plaintiff moving for a permanent injunction must show: (1) actual success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the injury to the nonmovant; and (4) that the injunction would not disserve the public interest. *Statewide Detective Agency v. Miller*, 115 F.3d 904 (11th Cir.1997).

As the court is granting the plaintiff's motion for summary judgment, the NAF has shown actual success on the merits. The NAF has also shown a substantial threat of irreparable injury because its First Amendment rights are at stake. The constitutional weight of the NAF's injury far outweighs any injury to MARTA. Further, the court finds that a permanent injunction would not disserve the public interest. Rather, it would protect the public interest by protecting those rights to which it too is entitled.

### III. *CONCLUSION*

For the foregoing reasons, the court hereby GRANTS the plaintiff's motion for summary judgment [Doc. No. 18–1]; DENIES the defendant's motion for summary judgment [Doc. No. 21–1]; and GRANTS the plaintiff's request for a permanent injunction. The plaintiff is directed to submit a proposed judgment for a permanent

injunction consistent with this order. In preparing the proposed order, the plaintiff shall confer with opposing counsel as to the form of the injunction. The proposed judgment shall be submitted within thirty days of the docketing of this order.

