[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 6, 2005
THOMAS  K. KAHN
CLERK

No. 05-12068
Non-Argument Calendar
_____

D. C. Docket No. 04-01257-CV-WSD-1

JEROME CALVERT,

Plaintiff-Appellee,

versus

FULTON COUNTY, GEORGIA,
CLERK OF SUPERIOR COURT,
JUANITA HICKS, ET AL.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 6, 2005)**

Before ANDERSON, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Juanita Hicks, Tina Robinson, and Phyllis Brown (collectively, "Appellants"), proceeding in their individual capacities, appeal the district court's denial of qualified immunity in Plaintiff Jerome Calvert's 42 U.S.C. § 1983 action alleging violations of his First Amendment rights of free speech and association.[1]  The claims asserted by Calvert, who is black, were based on alleged adverse employment actions taken against him after he supported the candidacy of a white political opponent of Hicks. Appellants argue the district court erred by denying qualified immunity because no clearly established law gave Appellants "fair warning" that the conduct set forth in Calvert's complaint was unlawful.

We review <u>de novo</u> a district court's holding that public officials are not entitled to qualified immunity because they violated clearly established law. <u>Johnson v. Clifton</u>, 74 F.3d 1087, 1090 (11th Cir. 1996).  After thorough review of the record and the parties' briefs, we affirm.

---

[1]As for Appellants' challenge to the denial of qualified immunity on Calvert's Fourteenth Amendment claims, we are unpersuaded by Appellants' arguments and affirm the district court's conclusion that the allegations of Calvert's complaint were sufficient to defeat a qualified immunity defense.  Calvert also sued Fulton County, Georgia and Hicks, in her official capacity.  Those claims were dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.  Only the district court's denial of qualified immunity to the individual defendants on the First Amendment claims is before us.

The facts relevant to the qualified immunity analysis are straightforward and largely undisputed.[2] Prior to initiating this lawsuit, Calvert was an employee in the office of the Clerk of Superior Court of Fulton County, Georgia. Appellant Hicks holds, and has held, the elected office of Clerk of the Superior Court of Fulton County since 1988. Appellants Robinson and Brown are both management-level employees in the Clerk's office. In his complaint, Calvert alleged that the Appellants discriminated and retaliated against him, based on race, after he publicly endorsed, and openly and publicly participated in campaign efforts on behalf of, Lewis Pittman, a white candidate for the Clerk of Court position. Calvert alleged that the defendants, "all of whom are black, were infuriated over the decision of Calvert, who is also black, to support Pittman (who is white) over Hicks in the upcoming election." Calvert stated that the adverse employment actions taken against him included "demeaning and unwelcome transfers and job assignments[;] bogus, contrived, and pretextual 'write-ups' and reprimands[;] unpaid suspensions[;] and ultimately, involuntary termination of employment."

---

[2] At this procedural point, we, like the district court, accept as true the facts as set forth in Calvert's complaint. See Wilson v. Strong, 156 F.3d 1131, 1133 (11th Cir. 1998)("In reviewing a motion to dismiss based on qualified immunity, the district court is required to accept the factual allegations in the plaintiff's complaint as true and draw all reasonable inferences in favor of the plaintiff.").

Appellants moved to dismiss the complaint, arguing, <u>inter alia</u>, that they were entitled to qualified immunity on Calvert's pure political patronage claims.[3] Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities. <u>Kingsland v. City of Miami</u>, 382 F.3d 1230, 1231-32 (11th Cir. 2004). The doctrine shields government officials from liability to the extent that "their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817-18, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity. <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1263 (11th Cir. 2004). To be eligible for qualified immunity, the official must first establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred. <u>Id.</u> at 1263-64. Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity. <u>Id.</u> at 1264. In order to demonstrate that the official is not entitled to

---

[3] When Calvert filed his complaint, it was unclear whether he asserted pure political patronage claims, pure expression claims, or mixed patronage/expression claims. <u>See</u> <u>Terry v. Cook</u>, 866 F.2d 373, 375-77 (11th Cir. 1989) (distinguishing between these types of claims) . After Appellants moved to dismiss based on Fed. R. Civ. P. 12(b)(6), arguing Calvert failed to state a claim upon which relief could be granted, Calvert clarified that his claims were purely of the "political patronage" variety. We consider them as such in this appeal.

qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was "clearly established" at the time he did it. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); Holloman, 370 F.3d at 1264. This two-step inquiry is designed to "provide[ ] ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

The district court, applying Elrod v. Burns, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976), and Branti v. Finkel, 445 U.S. 507, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980), the Supreme Court's seminal cases on political patronage claims, held the following:

> Here, it is undisputed that the Individual Defendants were performing discretionary functions at the time the alleged violation of federal law occurred, and that Plaintiff's allegations, if true, may establish a constitutional violation.
>
> Further, although the Individual Defendants argue the law was not clearly established that adverse employment action against a single employee -- as opposed to an *en masse* firing or the firing of multiple employees -- could give rise to a political patronage claim, the Court finds Plaintiff alleges facts which, if proven true, may defeat a claim of qualified immunity. (See Compl. ¶ 23 (alleging Individual Defendants' discharged other Clerk's office employees based on their support of Pittman)).

5

(citations omitted) (emphasis added). The district court concluded that because Calvert's complaint alleged <u>numerous</u> discharges, and not just his own, summary judgment based on qualified immunity was not warranted on Calvert's political patronage claims.

On the limited record before us, we cannot say the district court erred by concluding that, if the allegations in Calvert's complaint are true, which we too must assume they are, Appellants' qualified immunity defense fails. Accordingly, we affirm the denial of summary judgment at this point in the proceedings.

**AFFIRMED.**