[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  19-10944
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-00355-MHH

MARIO MARTIN,

Plaintiff-Appellee-Cross Appellant,

versus

SERGEANT DEWAYNE HOWARD,

Defendant-Appellant-Cross Appellee,

CITY OF BIRMINGHAM, ALABAMA,
BIRMINGHAM POLICE DEPARTMENT,

Defendants-Cross Appellees.

_____

Appeals from the United States District Court
for the Northern District of Alabama
_____

(January 10, 2020)

Before WILLIAM PRYOR, JILL PRYOR, and ANDERSON, Circuit Judges

PER CURIAM:

Dewayne Howard, a retired Sergeant with the Birmingham Police Department, appeals the district court's denial of his motion for summary judgment on the grounds of qualified immunity. Separately, Mario Martin cross-appeals from the district court's grant of summary judgment to the City of Birmingham, Alabama, and the denial of his motion for leave to amend his complaint. For the reasons that follow, we affirm the district court's denial of qualified immunity and dismiss Martin's appeal.

## I. BACKGROUND

Mario Martin is a concert and event promoter. He scheduled a performance by the rapper "Yo Gotti" at the Bill Harris Arena in Birmingham, Alabama, but a last-minute change forced him to change the venue to the Club Atlantis. However, Yo Gotti failed to show and the gathered audience grew restless and angry. Martin, along with his associates, attempted to leave the Club and return to the hotel to ascertain the nature of the rapper's absence.

At this point, Martin alleges that he was stopped by several off-duty officers with the Birmingham, Alabama, Police Department, who had been contracted by the Club to provide security. The officers prevented Martin from leaving and demanded that he pay them for their security services. A disagreement ensued as

2

to whether Martin or the Club were responsible for paying the officers. The officers informed Martin that if he did not pay them, he would be charged with nine counts of theft of services—one count for each of the unpaid officers. Martin's attempts to include Jeremy Cooper, the manager of the Club, in the discussion proved fruitless, and he surrendered to the officers the $200.00 he had with him. When this proved unsatisfactory to the officers, Martin telephoned one of his associates, who provided him with another $400.00, which he provided to the officers, again, not satisfying them.

It was at this point that Sergeant Dewayne Howard arrived on the scene. Howard became aware that many of his officers had been dispatched to the Club and, curious as to the reason for the *en masse* dispatchment, decided to investigate himself. Upon arriving, Howard discovered that the crowd, restless and upset at the performer's cancellation, had started fighting, which precipitated the dispatches. The officers met Howard at the scene and informed him that Martin had not paid them, so Howard confronted Martin about the matter. Martin alleges that Howard threatened that he would arrest him if Martin did not pay the officers. In response, Martin agreed to pay the officers from his percentage of the event's bar sales, an amount totaling about $575.00. Howard and the officers then allowed Martin to address the crowd to inform them that their tickets would be refunded. After Martin returned, Howard agreed to escort Martin from the venue.

3

Martin followed up with the police department, filing complaints alleging that his money had been taken from him by police officers. The police department tasked an internal affairs investigator with investigating Martin's allegations. The investigator determined that Martin was not detained and that the officers had not threatened him with criminal charges if he did not pay them. The investigator ultimately concluded that Martin's complaint was not supported by the available evidence and did not discipline any of the officers alleged to have been involved.

On February 29, 2016, Martin filed the instant case in federal court against the City of Birmingham, the Birmingham Police Department, Sergeant Howard, the unknown officers, and the Club. Martin's complaint included a claim under 42 U.S.C. § 1983 that the defendants violated his Fourth Amendment right to be free from unreasonable seizures; a section 1983 claim against the City for failure to train, supervise, or discipline its officers; a § 1985 conspiracy claim against all defendants; an unjust enrichment claim against all defendants; and a negligence and wantonness claim against all defendants. Later, Martin sought to amend his complaint to add the names of the previously unknown officers, which the district court denied. The district court granted the defendants summary judgment on all of Martin's claims except for his section 1983 claim against Howard and his claims for unjust enrichment and negligence and wantonness against the Club. Howard timely appealed to us. Martin cross-appealed the district court's grant of summary

4

judgment to the City on Martin's section 1983 claim and its denial of his motion for leave to amend his complaint. We address each in turn.

## II. HOWARD'S APPEAL

We review the district court's denial of qualified immunity de novo. Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000). We begin by resolving "all issues of material fact in favor of the plaintiff" and then "answer the legal question of whether the defendants are entitled to qualified immunity under that version of the facts." Thornton v. City of Macon, 132 F.3d 1395, 1397 (11th Cir. 1998). Qualified immunity protects "government officials performing discretionary functions" from suit "unless the conduct which is the basis for the suit violates 'clearly established federal statutory or constitutional rights of which a reasonable person would have known.'" GJR Invs. v. Cnty. of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998) (alteration omitted) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

We begin by determining whether the official in question was performing a discretionary function. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004). Because Sergeant Howard was indisputably acting within his discretionary authority at the time of the conduct in question, the burden shifts to Martin to prove that Howard is not entitled to summary judgment on the grounds of qualified immunity. Id. To succeed, Martin must demonstrate that (1) Howard violated his

5

"constitutional rights" and that (2) those rights "were clearly established at the time of the putative misconduct." Loftus v. Clark-Moore, 790 F.3d 1200, 1204 (11th Cir. 2012) (alteration omitted) (quoting Pearson v. Callahan, 555 U.S. 223, 226 (2009)). We are free to decide these inquiries in either order, depending on what makes the most sense in the circumstances before us. See Callahan, 555 U.S. at 236.

Here, we start with Martin's claim that Howard violated his constitutional rights. Pursuant to the Supreme Court's holding in Johnson v. Jones, we "take, as given, the facts that the district court assumed when it denied summary judgment." 515 U.S. 304, 319 (1995). The district court indicated that

> Mr. Martin maintained that Club Atlantis was supposed to pay the off-duty officers. Mr. Martin did not have a written agreement with Club Atlantis, so Mr. Martin's dispute with Mr. Cooper amounted to a he said, [s]he said disagreement. According to Mr. Martin, Sergeant Howard credited Mr. Cooper's version of events and told Mr. Martin that if he did not pay the officers within 15 minutes, he would go to jail.

District Court Order, Doc. 66, at 16. Martin argued before the district court that this conduct violated his Fourth Amendment rights. He argued, *inter alia*, that Howard violated his Fourth Amendment rights when Howard seized his property by threatening him with arrest to compel the seizure. The district court agreed with Martin. It determined that a jury "reasonably could conclude that Sergeant Howard violated Mr. Martin's Fourth Amendment rights when he conditioned Mr. Martin's release from detention on Mr. Martin surrendering his money to the off-

6

duty officers." The district court then concluded that this right was clearly established at the time of the incident, citing our cases applying the Fourth Amendment and our opinion in Wright v. Sheppard, in which we held, "If an officer departs from the role of a neutral law enforcement officer by attempting to enforce a private debt collection, and engages in conduct that effectively intimidates an alleged debtor into refraining from exercising her legal rights, then the officer exceeds constitutional limits on his authority." 919 F.2d 665, 673 (11th Cir. 1990) (citing Booker v. City of Atlanta, 776 F.2d 272 (11th Cir. 1985)). Howard contends that this was incorrect. We disagree.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A seizure of property occurs when there is a 'meaningful' interference with a person's possessory interest in it. Generally, the seizure of personal property is *per se* unreasonable when not pursuant to a warrant issued upon probable cause." Crocker v. Beatty, 886 F.3d 1132, 1136 (11th Cir. 2018) (citing United States v. Virden, 488 F.3d 1317, 1321 (11th Cir. 2007)). Though there are several exceptions to this "general rule," they largely relate to seizure of property in the context of an ongoing law enforcement investigation. See generally Minnesota v. Olson, 495 U.S. 91, 100 (1990) (noting the exigent circumstances exception to the warrant requirement).

7

It is clear to us that at the time of Martin's seizure, he had a constitutional interest in his property—that is, the $575.00 he paid to the officers after Howard's threat.  And when Howard directed Martin to give the officers his property, Howard effectively "seized" the property within the meaning of the Fourth Amendment.  At the time of this seizure, Howard was not operating pursuant to a warrant issued upon a showing of probable cause, as the Fourth Amendment requires.  Nor were "exigent circumstances," such as the imminent destruction of evidence, present that would justify Howard's warrantless seizure.  Indeed, the currency that Martin held, and then surrendered upon threat of arrest, at the time of the incident was not evidence in any sense of the word—rather, it was Martin's personal property, to which the off-duty officers, rightly or wrongly, felt they were entitled.  We conclude, therefore, that Howard violated Martin's constitutional rights.

Our inquiry does not end here.  We must next consider whether Martin's constitutional rights were clearly established at the time of the incident.  As we have previously held

> [a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

8

Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citations omitted).  A broad statement of principle "may give notice to officers, provided that the decisions clearly apply to the situation at hand" and that it is "specific enough to give the officers notice of the clearly established right." Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005).

We conclude that our holding in Wright—that an officer exceeds the constitutional limits on his authority by attempting to enforce a private debt collection—was sufficient to put Howard on notice that his actions violated Martin's clearly established rights.  As we have explained, "[e]xact factual identity with a previously decided case is not required," so long as the available law provided the official with "fair warning" that his conduct violated the constitution. Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (citation and quotation omitted).  We conclude that the requisite "fair warning" existed here.  Accordingly, we affirm the district court's order as to this issue.

### III. MARTIN'S CROSS-APPEAL

In addition to defending the district court's denial of qualified immunity to Sergeant Howard, Martin also cross-appeals the district court's decisions to (1) deny his motion to amend his complaint and (2) its grant of summary judgment to the City of Birmingham.  Before reaching the merits of Martin's arguments, "we have a special obligation to satisfy ourselves . . . that we have jurisdiction" to do

9

so.  See Tamiami Partners, Ltd. by & Through Tamiami Dev. Corp. v. Miccosukee Tribe of Indians, 177 F.3d 1212, 1221 (11th Cir. 1999).  Under 28 U.S.C. § 1291, our jurisdiction is limited to "final decisions" issued by district courts.  "As a general rule, an appeal may be taken . . . only where the district court has disposed of *all* claims against *all* parties."  Leslie v. Hancock Cnty. Bd. of Educ., 720 F.3d 1338, 1344 (11th Cir. 2013) (quoting Hudson v. Hall, 231 F.3d 1289, 1293 (11th Cir. 2000)) (emphasis added).

The exceptions to this rule are narrow and well-delineated.  As we have routinely explained, denials of qualified immunity fall within the collateral order doctrine—so long as "the disputed issue involves whether or not the defendant's conduct constitutes a violation of clearly established law"—and public officials "may appeal such a decision because it is considered a final, collateral order regarding qualified immunity."  Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996) (citing Mitchell v. Forsyth, 472 U.S. 511, 528 (1985)).  Accordingly, Howard's appeal of the district court's denial of qualified immunity is properly before us, even though it is not a "final judgment" under section 1291, because it is an appeal in which the "disputed issue involves whether or not the defendant's conduct constitutes a violation of clearly established law."  Johnson, 74 F.3d at 1090.

10

Further, Federal Rule of Civil Procedure 54 carves out a discrete exception in an action that "presents more than one claim for relief . . . or when multiple parties are involved." Fed. R. Civ. Pro. 54(b). In that case, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no reason for delay." Id. If not, any order "that adjudicates fewer than all of the claims or rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Id. As we have explained,

> An order is appealable under Rule 54(b) when three conditions are satisfied. First, the order must be "final," as traditionally defined under section 1291, as to one or more, but fewer than all, of the multiple claims or parties. Second, if the order is final as to a claim or party, the district court must direct entry of judgment. Third, the district court must expressly determine that there is no just reason for delay.

Mathis v. Zant, 903 F.2d 1368, 1371 (11th Cir. 1990) (citations omitted). In other words, as our sister circuit explained, "an order which disposes of one or more parties or claims but does not end the litigation must either be certified as final pursuant to Rule 54(b) or be disposed of with the remainder of litigation at the conclusion of the entire case in compliance with Rule 58." Willhauck v. Halpin, 919 F.2d 788, 793 (1st Cir. 1990).

Here, the orders denying Martin's request to amend his complaint and granting the City of Birmingham summary judgment on Martin's section 1983

11

claim, which he cross-appeals to us, were not expressly certified as a "final judgment" in compliance with Rule 54(b).  Accordingly, we may only hear them if they fit within our pendent appellate jurisdiction.

"Under the pendent appellate jurisdiction doctrine, we 'may address otherwise nonappealable orders if they are 'inextricably intertwined' with an appealable decision or if 'review of the former decision is necessary to ensure meaningful review of the latter.'"  Hudson v. Hall, 231 F.3d 1289, 1294 (11th Cir. 2000) (cleaned up) (quoting Summit Med. Assoc., P.C. v. Pryor, 180 F.3d 1325, 1335 (11th Cir. 1999)).  A nonappealable order is "inextricably intertwined" with an appealable order only if determination of the pendent issue is "essential to the resolution of properly appealed collateral orders."  Swint v. Chambers Cty. Comm'n, 514 U.S. 35, 51 (1995) (quotation omitted).

We conclude that we do not have pendent appellate jurisdiction over Martin's cross-appeal.  The question of whether a municipality is liable for a section 1983 claim concerns a determination as to whether "the execution of a government's policy or custom . . . inflicts [an] injury," Monell v. Dep't of Soc. Servs., 436 U.S. 658, 696 (1978), is entirely separate from our qualified immunity analysis, which questions whether an individual public official violated a plaintiff's clearly established constitutional rights.  See Hudson, 231 F.3d at 1292 n.1.  "[T]he district court's grant of summary judgment to the [municipality under Monell] . . .

12

does not fall within our pendent appellate jurisdiction" in a qualified immunity appeal.  Id.

Similarly, the question of whether the district court properly denied Martin's motion under Rule 15(a) to amend his complaint to replace the fictitious names of defendants with their actual names is separate from our qualified immunity analysis.  Determining whether the district court abused its discretion under Rule 15(a) requires us to evaluate whether there was "a substantial reason to deny leave to amend," Thomas v. Town of Davie, 847 F.2d 771, 773 (11th Cir. 1988), like "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  Foman v. Davis, 371 U.S. 178, 182 (1962).  These questions are answered by looking to a party's conduct in the course of litigation, which are altogether disentangled from the merits of that party's case.  In other words, the questions of qualified immunity and the propriety of the district court's decision to not grant Martin leave to amend his complaint pull on threads of a different cloth and are not intertwined so as to allow us to exercise pendent appellate jurisdiction over them.  Accordingly, we dismiss Martin's cross-appeal.

13

## IV. SUMMARY

Our review persuades us that the district court appropriately denied Sergeant Howard qualified immunity and we affirm the district court's opinion as to that issue. Because we determine that we are without jurisdiction to hear Martin's cross-appeal concerning the district court's grant of summary judgment to the City of Birmingham on his section 1983 claim and its denial of his motion for leave to amend his complaint, we dismiss his cross-appeal.

The district court's order is **AFFIRMED.** We **DISMISS** Martin's cross-appeal.

14